FILED 13 FEB '20 15:50 USDC-ORE

Glenn Greening
2845 Harris St.
Eugene, OR 97405
Tel. 541.513.4777
duty.firearms.hidden.danger@gmail.com

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF OREGON EUGENE DIVISION

## JURISDICTION

| | |
|---|---|
| GLENN GREENING, <br><br> Plaintiff, <br><br> vs. <br><br> LANE COUNTY OREGON, <br><br> LANE COUNTY OREGON ADMINISTRATION , <br><br> STEVE MOKROHISKY, COUNTY ADMINISTRATOR, HEAD OF THE LANE COUNTY DEPARTMENT OF ADMINISTRATION <br><br> LANE COUNTY HEALTH AND HUMAN SERVICES DEPARTMENT, <br><br> KAREN GAFFNEY, LANE COUNTY HEALTH AND HUMAN SERVICES DEPARTMENT DIRECTOR, <br><br> LANE COUNTY PAROLE AND PROBATION (A SUBDIVISION OF LANE COUNTY ADMINISTRATION), <br><br> DONOVAN DUMIRE MANAGER OF LANE COUNTY PAROLE AND PROBATION <br><br> LANE COUNTY COUNSEL <br><br> ADVISORY COUNSEL FOR LANE COUNTY PAROLE AND PROBATION, SEBASTION NEWTON-TAPIA <br><br> GLOCK INC, SMYRNA, GEORGIA. THROUGH ITS REGISTERED AGENT:  NATIONAL REGISTERED | Case No.: 6:20-CV-245-MK <br><br><br> COMPLAINT FOR CIVIL RIGHTS VIOLATIONS RESULTING IN THE WRONGFUL DEATH OF PLAINTIFF'S SON, WILLIAM HAN MANSTROM-GREENING |

WRONGFUL DEATH - 1

AGENTS, INC., 780 COMMERCIAL STREET, SE, SUITE
100, SALEM, OR 97301

Defendants

## INTRODUCTION

On February 13, 2017, at 10:30 p.m.,. Plaintiff Lane County Parole and Probation

Officer Glenn Greening put his Glock 19 duty firearm on a desk in his home midway between

the front and rear doors of the home and next to the room where he would be sleeping.  He went

to sleep in a recliner in an adjacent home theater room which was  between the firearm and the

bedroom where  Plaintiff's trusted adult son, William Han Manstrom-Greening, was in his

bedroom at the far end of the house, preparing for sleep.  Plaintiff had two purposes, the defense

of himself and his son and to ensure he did not forget the firearm in the morning.  While the

Plaintiff was asleep, his son, William, walked through the theater room passing within a foot of

the Plaintiff , took the firearm and went to their detached garage.  He used the firearm to kill

himself a few minutes after midnight on February 14, 2017.   The acts and omissions of the

Defendants created and/or enhanced the danger of death to William Han Manstrom-Greening

and Glenn Greening and deprived them of their Fourteenth Amendment due process liberty

interest in physical security.  The acts and omissions were also the cause of William Han

Manstrom-Greening's wrongful death under state law.  Those acts and omissions led to a lawsuit

by the victim's estate against the Plaintiff and against Lane County.  That suit against the

Plaintiff failed but the very nature of the complaint in that suit and the false or misleading

Statements of Fact in that suit were designed to publicly shame the Plaintiff and to prejudice

potential jurors.    That suit was vindictive and frivolous in nature because it failed to state a

cause of action that could even potentially overcome the victim's intervening action.

## JURISDICTION AND VENUE

1.   Plaintiff brings an action for money damages against Lane County , acting through Lane

County Administration, Lane County Administrator Steve Mokrohisky, Lane County Health and

Human Services Department, Karen Gaffney, Lane County Health and Human Services

Department Director, Lane County Parole and Probation (a subdivision of Lane County

Administration), Donovan Dumire Manager of Lane County Parole and Probation, Advisory

Counsel for Lane County Parole, Lane County Counsel and Probation Sebastian Newton-Tapia,

(the aforementioned defendants will be referred to collectively as Lane County) and Glock Inc.,

Smyrna, Georgia, through its registered agent: National Registered Agents, Inc., 780

Commercial Street, SE, Suite 100, Salem, OR 97301 for depriving William Han

Manstrom-Greening and Plaintiff Glenn Greening of their due process liberty interests in

physical security protected under the Fourteenth Amendment to the United States Constitution

and made actionable by 42 U.S.C. section 1983.

Plaintiff also brings a state law wrongful death claim against Lane County and Glock

Inc..Accordingly, this Court has federal question jurisdiction under 28 U.S.C. sections 1331 &

1343 and supplemental jurisdiction pursuant to 28 U.S.C. section 1367 over all related state law

claims.

WRONGFUL DEATH - 3

2.    Venue is proper in this judicial district under 28 U.S.C section 1391 because a substantial part of the acts or omissions giving rise to the claims for relief occurred in Lane County, Oregon and each of the defendants is subject to the personal jurisdiction of this Court.

### PARTIES

3.    Glenn Greening, a citizen and resident of Lane County, Oregon,  is the father of decedent Willian Han Manstrom-Greening.

4.    Defendant Lane County is a political subdivision of the State of Oregon.

5.    Defendant Lane County Administration is a Department of Lane County that provides an array of services to community members, County departments and partner organizations. It is the focal point for implementing policies approved by the elected Board of County Commissioners. performs certain functions of Lane County Government and has a coordinating role among the County Council and the various governmental departments of the County.

6.    Defendant Steve Mokrohisky is the County Administrator, the head of the Lane County Administration Department.

7.    Defendant Lane County Health and Human Services Department includes its subdivision, Public Health.

8.    Defendant Karen Gaffney was the Director of the Lane County Department of Health and Human Services at the time of the victim's death.

9.    Defendant Lane County Parole and Probation is a subdivision of the Lane County Administration Department and was Plaintiff's employer at the time of the victim's death.

Plaintiff had worked for Parole and Probation in Lane County since 1988 under the State of

Oregon Department of Corrections until 1997 when the funding and responsibility was

transferred to Lane County where it has remained.

10.     Defendant Donovan Dumire was the Manager of Lane County Parole and Probation and

was so at the time of the victim's death .

11.     Defendant Lane County Counsel provides legal services to Lane County and its

subdivisions.

12.     Defendant Sebastion Newton-Tapia is employed as an in-house attorney by Lane County

Counsel. He was assigned to advise Lane County Parole and Probation in a dual role as legal

advisor to the agency's management and as an instructor to the officers at-large on legal issues.

13.     Defendant Glock Inc., Smyrna, Georgia manufactured the Glock Model 19 pistol Serial

Number AYU935US. Glock Inc. sold that firearm to Plaintiff Glenn Greening on July 27, 1994.

Lane County Parole and Probation, then administered by the Oregon Department of Corrections,

arranged the firearm purchase as a group sale to its officers for use as duty weapons.


**FACTS**

14.     At all times material hereto, Plaintiff Glenn Greening was employed as a Parole and

Probation Officer by Lane County and carried a Glock Model 19 pistol Serial Number

AYU935US as approved by Lane County Parole and Probation.

15.     Plaintiff was first employed as a Parole and Probation Officer in 1981 by the Louisiana

Department of Corrections and Public Safety. He was a Unit Supervisor and the office armorer,

in charge of department firearms. Plaintiff moved to Oregon to be nearer family and got a job in

1988 with Lane County Parole and Probation  where he was employed until November of 2017 including a year as an acting unit supervisor around 2000.

16.      In 1988, Parole and Probation Officers in Oregon were not routinely armed.  Plaintiff was "threat armed" when his life was threatened by an offender whose father kept numerous firearms and ammunition accessible to his son in his house.  Plaintiff was then armed when other Parole and Probation Officers were not because he supervised a specialized caseload of dangerous offenders.  In 1994, when Parole and Probation Officers were given the option to be armed he was required to return the department owned firearm and purchase his own.

17.      Before 1994, officers in Lane County were not armed but the Plaintiff had carried a Smith and Wesson revolver owned by the Oregon Department of Corrections when he supervised a unique group of dangerous offenders. Plaintiff participated in a study by Oregon State University to develop a psychological standard for authorizing Parole and Probation Officers to be armed.

18.      In 1994, when Parole and Probation Officers at-large got the option to be armed, Plaintiff Glenn Greening had no choice in deciding what firearm brand, model or caliber to purchase. Plaintiff Glenn Greening had no option to negotiate any aspects of the sale including the price. The sale occurred from the trunk of the Glock salesman's car at the Department of Corrections firing range near Salem, Oregon.  Plaintiff Glenn Greening objected to the choice of firearm because it was too large for ready concealed carry, it lacked a manual safety and was designed to be carried cocked so it would fire single action or with little force required to pull the trigger making it as simple as a toy to operate.  Plaintiff felt these factors left officers vulnerable to having their firearm or their partner's firearm grabbed and used against them.  Lane County

WRONGFUL DEATH - 6

Parole and Probation exerted continuous control of that firearm in that the Plaintiff could not have maintenance or repair or modification, beyond routine cleaning, done by anyone other than Lane County Parole and Probation Armorers. With these conditions and the Plaintiff's objections the only purpose for this firearm was for work and it was only used for work or for work-related safety concerns such as going to and from work and home defense since work safety arrangements for securing the firearm were inadequate and officers could easily be tracked to their homes due to office practices.

19.     Lane County required that the weapon be concealed when off duty even though it was privately owned. Lane County told officers that they could carry it concealed off-duty by virtue of their status as Peace Officers and that they did not need to have a permit to carry a concealed weapon. Lane County exercised control of the privately owned firearm on and off-duty placing any use of it within the scope of duty.

20.     Lane County knew that a Parole and Probation officer left a firearm in his personal vehicle and it was stolen. Lane County knew that a criminal was in possession of the officer's firearm yet they took no action to develop a policy to protect the community from errant Lane County firearms. Lane County knew that a Sheriff's Deputy left firearms in a vehicle outside his house and that they were stolen yet they took no action.

21.     The Plaintiff's duty station was in the West University Police Station (WUPS) which was operated as a neighborhood police station by the City of Eugene Police Department. A lock box was available in another officer's office but the Plaintiff took the firearm home as permitted and approved of. Plaintiff objected to the available weapon storage at work with Lane County. A Glock duty firearm had been burglarized from a duty station similar to the Plaintiff's duty

station.  The Plaintiff's understanding of the circumstances of that burglary were that the firearm

was stolen during the night from the same style of lockbox available at WUPS and some other

Lane County Parole and Probation facilities and that the burglarized county office at the Lane

County Fairgrounds was locked and protected by a burglar alarm.  The WUPS office had gun

boxes that were constructed of thin sheet metal that could have been defeated easily or simply

pried up and taken away by a thief.   The office with the firearm's lockboxes was frequented by

felons who could easily see the poor security situation.  There was no assurance that the alarm

would be set either by the office staff at the end of business hours or by police using the break

room and other facilities during the night.  The Plaintiff believed it was more responsible to

maintain control of the firearm and had advised his supervisor of his concerns.

22.    The Plaintiff's caseload consisted entirely of violent offenders who were sometimes

present when he arrived at or left work.  It is common for offenders to have resentments and

officers are obviously predictable and easy targets when they arrive at and leave work.  It was

entirely reasonable and appropriate for the Plaintiff to take his duty firearm home with him since

he could be easily tracked to and from his home.  Lane County Officers were known to keep

firearms secured within their homes but not secured within their homes from trusted responsible

adults.  Lane County and Glock Inc. should have known that some officers kept firearms by their

bedsides, for instance. Of course, another adult in the household could take such a firearm while

the Officer slept.  Plaintiff felt it was safer to keep a firearm a few steps away  so one wouldn't

use it while still half asleep.  Plaintiff has been shown a training film several times at work which

shows an alert, standing police officer with a holstered gun facing a man with a knife 33 feet

away.  The officer knows what is about to happen and is ready to quick-draw his gun.  The man

with the knife suddenly runs and is able to stab the officer before the officer can draw his

firearm. It is obvious that a determined attacker could kick in a door and and surprise a sleeping

person before they could react so the issue of whether the gun was located by the bedside is not

what it seems. The gun was reasonably located for the type of slower threat that one could

possibly defend against. There was no policy by Lane County regarding the care of duty

firearms when off duty.

23.     The firearm was secured within the Plaintiff and the victim's locked home. The victim

was a trusted responsible adult. The Plaintiff and the victim's mother and the victim's school did

not see any commonly known warning signs. The victim was doing well in school, had lettered

in Track, Cross County and Chess. He had friendships and was outgoing and enjoyed life. He

had plans for his future. He was competent and well adjusted.

24.     Plaintiff gave the victim access to their safe in September of 2016 after the victim's 18th

birthday, 5 months before his death, when the victim asked to keep money there. The victim was

trusted not to handle the Plaintiff's duty firearm which was kept on a separate shelf in that safe.

Plaintiff happened to leave his duty firearm, a Glock pistol, on a desk during the night of

February 13 to February 14, 2017 for two purposes:

        A. Because of the nature of his work for Lane County Parole and Probation and the

           obvious ease with which a supervisee with a grudge could track the Plaintiff to

           and from work: for defense of himself and his son if he got enough warning to

           respond. Plaintiff reasonably believed that an attack without warning would not

be defensible as an attacker can breach a door and gain control before a sleeping

person can react (such tactics as the military and police use could be used for

criminal purposes as well).

B. As preparation for work the next morning, so Plaintiff would not forget the

firearm at home and have to return to get it.  The firearm was routinely kept in a

safe except when in anticipation of work the next morning.

25.    Plaintiff had briefed William in safe gun handling when he went through a Nerf gun

phase and a later paintball phase but had discouraged any interest in firearms.  William was not

allowed to handle them in the Plaintiff's home and was never taken shooting by the Plaintiff.

William reported that his mother taught him to use a machine gun during a trip to Vietnam in

2007 when he was 8 years old and again during a trip to Ethiopia in 2010.  When he was 16 or

17 years old, during a driving lesson that passed the Baron's Den Shooting Range, he said he had

been there several times, that his mother had taken him there and sent him there with a family

from his school that she asked to take him so he had some experience with firearms.

26.    William Han Manstrom-Greening used the Plaintiff's Glock duty firearm to kill himself

shortly after midnight on the morning of February 14, 2017.

27.    Plaintiff was left confused as to why William was a suicide victim.  He was a senior at

Marist High School.  He had good grades and planned to take Engineering at Oregon State

University.  He lettered in track, cross-country and chess.  He had friends and interests.  He was

exuberant and laughing at home.  He seemed to have life by the tail.  He had been ill for a few

days.  His girlfriend had broken up with him on January 7, 2017, over a month before the suicide

and on January 11, 2017 he told his father that he'd seen his estranged mother and had an

argument with her but he had recovered from the flu and the girlfriend was old news so a cause was a mystery.

28..      Since 2011, and perhaps before, Lane County Lane County's public, not internal, website, https:// www.lanecounty.org  and https:// preventionlane.org  has had copyrighted information stating that firearms are a risk factor for suicide.  That means that simply having a firearm handy puts one at risk of suicide.  Lane County did not tell its firearm carrying employees of the danger in 2011, 2012, 2013, 2014, 2015, 2016 or by February 14, 2017.   Lane County has not advised employee's household members who are similarly at risk.  The Lane County website includes a number of links to such information including a link to Harvard University's "Means Matter" site.

29.      As shown by paragraph 28, above, Defendants knew or had reason to know that access to firearms was a risk factor for suicide.  Defendants knew or had reason to know that some suicides occur impulsively in circumstances where the means of suicide are available and that such suicides would not otherwise occur.

30.      Defendants Lane County, Lane County Administration, Lane County Parole and Probation, Advisory Counsel for Lane County Parole and Probation and Lane County Department of Health  (hereafter referred to collectively as Lane County) or their predecessors in their possistions, from whom they inherited their roles and responsibilities, knew or should have known of the unapprehended suicide, on or about January 5, 1999, of Lane County Parole and Probation Officer Lane Hartley .  That information, coupled with their later knowledge that mere access to firearms is a risk factor for suicide, should have prompted the various Lane County Defendants to advise Plaintiff that the Plaintiff's duty firearm was a risk to the employee

and the employee's associates including even trusted adult family members in a secure home setting.

31.      Defendant Advisory Council for Lane County Parole and Probation had a particular duty of care to seek information and to disseminate the information described above in paragraph 27 to Lane County Parole and Probation officers which he failed to do despite a history of deaths by suicide occurring within Lane County Parole and Probation community and within the Lane County Sheriff's Office.

32.      Regardless of the firearm's status at the time of the suicide, regardless of whether it was within the scope of the Plaintiff's employment at that moment, regardless of whether the particular firearm was owned by the employee or by Lane County,  it was foreseeable to Lane County that its employees' duty firearms would be in their homes and might be accessible to their household members.  Lane County had no policy requiring nor any expectation that firearms would be doubly secured from trusted responsible adult household members when inside an employee's secure home.

33.      Glock Inc. knew that it sold the firearm used in the suicide directly to Plaintiff on July 27, 1994 to be used for his employment as an Oregon Parole and Probation Officer.

34.      Glock Inc. advertises online that "(o)ver 65% of federal, state and local agencies in the United States have been issued GLOCK pistols."  Glock Inc. should know that law enforcement officers often carry firearms to and from their homes and commonly have firearms accessible in their homes to responsible adults.  An armament company with Glock's volume of business in non-sporting firearms, pistols, should have known that access to a firearm was a risk factor for suicide.  Glock should have alerted users of its pistols that access to their pistols was a risk factor

WRONGFUL DEATH - 12

for suicide. Glock should have regarded this information as a hidden defect in their product and issued a warning to users of their product. Glock Inc.'s failure to act as a responsible corporate citizen was willfully negligent since it could be predicted to result in suicide.

35.     Firearms are inherently dangerous. The fact that access to firearms is a risk factor for suicide means that firearms have a hidden danger that is not apparent to a reasonably responsible person.

36. Since learning that access to firearms is a risk factor for suicide Plaintiff regards access to firearms as an unreasonable risk to expose oneself or anyone else to. Anyone can have a bad day.

37.     Lane County required the Plaintiff to qualify with his duty firearm twice a year and allowed him to qualify with another weapon to be used off-duty or on-duty as a hidden, backup, firearm in case their primary duty firearm was taken from them or was otherwise not serviceable. This practice clarifies that it was accepted and expected that officers might have their duty firearms at home. There was no training that the firearm was a risk factor for suicide. At each firearms training there was a warning about the hidden danger of lead from bullets being ingested. Officers were advised not to eat at the range, to wash themselves and their clothing and even to remove their shoes and clean them before entering their homes. The other hidden danger, the risk of suicide, was not mentioned.

38.     Plaintiff asserts that Lane County could be expected to conclude from the information on its copyrighted websitre (paragraph 25, above) that firearms are a risk factor for suicide and that giving people access to firearms would cause some suicides yet they blithely ignored the evidence.

WRONGFUL DEATH - 13

39.     Plaintiff asserts that Lane County is one entity that bears overarching responsibility and cannot avail itself of a finger pointing defense  among its various subdivisions and defendants.  It is not entitled to claim its Legal Department isn't responsible for what its Health Department knew or that it's Health Department could advise the public at large that firearms were a risk factor for suicide yet ignore fellow employees commonly known to carry firearms for work. Likewise, Lane County cannot assert that it was not negligent because it was dim-witted and failed to extrapolate from what it knew the conclusion that its employees and their families were at risk of suicide when they had access to firearms.

40.     Plaintiff held common beliefs that suicide came from reasons such as depression or business failure or to avoid a painful lethal illness and was unaware of the research that was known to the Lane County Defendant's and that was or should have been known to Glock Inc..

41.     The Plaintiff treasured his son and never would have exposes him to danger had he known that access to firearms was a risk factor for suicide.   Plaintiff would have left his duty firearm at work on February 13, 2017  to protect his son and himself, despite the poor security provided at his office, had Lane County or Glock Inc. informed him that the firearm was dangerous beyond its obvious and inherent dangerousness because research had shown that "Means Matter" -- that access to lethal means is a risk factor for suicide.

42.     Defendant Lane County is subject to the provisions of the Occupational Safety and Health Act of 1970, 29 U.S.C. 654, section 5,

> "Duties
>
> > (a) Each employer --(1)shall furnish to each of his employees employment
> > and a place of employment which are free from recognized hazards that

are causing or are likely to cause death or serious physical harm to his

employees;"

43.    Defendant Lane County met its duty under the Occupational Safety and Health Act of

1970 (as described in paragraph 39, above) in respect to the dangers of lead from bullets.  In the

Plaintiffs memory through recent years at twice yearly firearms qualifications conducted by Lane

County Parole and Probation the Rangemasters have included a warning that lead from bullets

fired at the range could be harmful if ingested and advised measures to avoid contaminating

oneself, one's home and one's family and pets.  Lane County Rangemasters behaved responsibly

whereas the upper echelons and the county department that had the information about firearms

being a risk factor for suicide behaved only accountably, no one told them to seek information or

to disseminate the information so they did only what they were accountable for.

### First Claim for Relief

Violation of Fourteenth Amendment (44 U.S.C. 1983)

Against LANE COUNTY OREGON,

LANE COUNTY OREGON ADMINISTRATION ,

STEVE MOKROHISKY, COUNTY ADMINISTRATOR, HEAD OF THE LANE COUNTY DEPARTMENT OF
ADMINISTRATION in his official and individual capacities

LANE COUNTY HEALTH AND HUMAN SERVICES DEPARTMENT,

KAREN GAFFNEY, LANE COUNTY HEALTH AND HUMAN SERVICES DEPARTMENT DIRECTOR in her official
and individual capacities

,

LANE COUNTY PAROLE AND PROBATION (A SUBDIVISION OF LANE COUNTY ADMINISTRATION),

DONOVAN DUMIRE MANAGER OF LANE COUNTY PAROLE AND PROBATION in his official and individual capacities

ADVISORY COUNSEL FOR LANE COUNTY PAROLE AND PROBATION, SEBASTION NEWTON-TAPIA in his official and individual capacities

(REFERRED TO IN THE AGGREGATE AS LANE COUNTY)

44.    Plaintiff incorporates by reference all allegations in the preceding paragraphs 1 through 43 as if fully set forth herein.

45.    Defendant Lane County failed to inform the Plaintiff that access to firearms was a risk factor for suicide.

46.    Defendant Lane County created a dangerous situation in the homes of their employees that carry firearms in the course of their duties by failing to inform them that access to firearms was a risk factor for suicide and that suicide could happen to people with access to firearms that would not otherwise be victims of suicide.  In effect, they gave a lottery ticket for tragedy to every armed employee and the adult members of their households.

47.    Defendant Lane County's willful failure to inform its employees that access to firearms is a risk factor for suicide over a period of at least 6 years denied them an opportunity to make informed decisions about their safety and the safety of their households.

WRONGFUL DEATH - 16

48.    Defendant Lane County's omission to inform showed a deliberate indifference to and or conscious disregard of the risk of harm to Glenn Greening or to trusted adult members of his household including William Han Manstrom-Greening.

49.    Access to the Plaintiff's firearm was the precipitating risk factor in the suicide of William Han Manstrom-Greening.

50.    The fact that access to firearms is a risk factor for suicide is new in the law and should be an exception to the concept that the suicide victim's own action intervened between prior causes and the outcome.   The access to a firearm is a hidden, compelling danger that for some unlucky people, as in this case, with apparently trivial or fleeting woes resultts in their suicide that would otherwise not have occurred.

51.    As a direct and proximal consequence of Defendant Lane County's constitutional violation of 29 U.S.C. 654 section 5 by failing to provide employment free from recognized hazards that are likely to cause death , William Han Manstrom-Greening had access to the Plaintiff's firearm which he would not otherwise have had.  The Plaintiff is entitled to recover non-economic and economic damages as compensation for the loss of Will's society, companionship and services in such amount as the jury may determine fair and reasonable compensation for such harms and losses.  Plaintiff is further entitled to punitive damages against the county for its reckless disregard of Plaintiff's and decedent's constitutional rights, and to punish and deter such conduct in the future.

52       . Pursuant to 42 U.S.C. section 1988, Plaintiff is entitled to recover attorney fees and costs.

## SECOND CLAIM FOR RELIEF

ORS 30.020

State Law Wrongful Death (Negligence)

Against LANE COUNTY OREGON,

LANE COUNTY OREGON ADMINISTRATION ,

STEVE MOKROHISKY, COUNTY ADMINISTRATOR, HEAD OF THE LANE COUNTY DEPARTMENT OF
ADMINISTRATION in his official and individual capacities

LANE COUNTY HEALTH AND HUMAN SERVICES DEPARTMENT,

KAREN GAFFNEY, LANE COUNTY HEALTH AND HUMAN SERVICES DEPARTMENT DIRECTOR in her official
and individual capacities,

LANE COUNTY PAROLE AND PROBATION (A SUBDIVISION OF LANE COUNTY ADMINISTRATION),

DONOVAN DUMIRE MANAGER OF LANE COUNTY PAROLE AND PROBATION in his official and individual
capacities

ADVISORY COUNSEL FOR LANE COUNTY PAROLE AND PROBATION, SEBASTION NEWTON-TAPIA in his
official and individual capacities

(REFERRED TO IN THE AGGREGATE AS LANE COUNTY)


53.     Plaintiff incorporates by reference all allegations in the preceding paragraphs 1 through

50 as if fully set forth herein.

54.     The fact that access to firearms is a risk factor for suicide is a recently recognized

inherent danger of firearms.  Once it was known, Lane County should have informed the

Plaintiff and its other employees that carry firearms.

55.     Lane County could have explored means to minimize their employees exposure such as

providing 3rd party check in and check out of firearms so they are secure from theft and from

factoring in a suicide.

WRONGFUL DEATH - 18

56.     Plaintiff reserves the right to supplement his specifications of Lane County's negligence after conducting reasonable and necessary discovery.

57.     Plaintiff 's failure to file a timely Notice of Claim was caused by the Defendant's concealment or failure to inform the Plaintiff of the fact that access to firearms is a risk factor for suicide.  Without that specialized knowledge held by the Public Health Division,  the Plaintiff or the Plaintiff and an attorney could not look at the facts and circumstances of Will's suicide and recognize its cause so the Plaintiff could not issue a timely Notice of Claim.   The Defendant Lane County's negligent omission to inform the Plaintiff should not benefit it to avoid a suit for negligence.  Plaintiff requests that the Court recognize this pleading as a timely Notice of Claim.

58.     William Han Manstrom-Greening's death was the direct result of the Defendant Lane County's negligence and the Plaintiff is entitled to recover non-economic and economic damages as compensation for the loss of Will's society, companionship and services in such amount as the jury may determine fair and reasonable compensation for such harms and losses.


### THIRD CLAIM FOR RELIEF

ORS 30.020

Against Defendant Glock Inc., Smyrna, Georgia


59.     Plaintiff incorporates by reference all allegations in the preceding paragraphs 1 through 19 and paragraphs 22 through 29 and paragraphs 33 through 36 and paragraphs 40 through 41 as if fully set forth herein.


WRONGFUL DEATH - 19

60.    Plaintiff 's failure to file a timely Notice of Claim was caused by the Defendant's concealment or failure to inform the Plaintiff of the fact that access to firearms is a risk factor for suicide. Without that specialized knowledge that was known or should have been known to Glock,, the Plaintiff or the Plaintiff and an attorney could not look at the facts and circumstances of Will's suicide and recognize its cause so the Plaintiff could not issue a timely Notice of Claim. The Defendant Glock Inc.'s negligent omission to inform the Plaintiff should not benefit it to avoid a suit for negligence. Plaintiff requests that the Court recognize this pleading as a timely Notice of Claim.

61.    Plaintiff reserves the right to supplement his specifications of Glock Inc.'s negligence after conducting reasonable and necessary discovery.

62.    Glock Inc. by virtue of it's role as a major arms manufacturer either knew or should have known  before February 14, 2017 that access to firearms is a risk factor for suicide.

63.    Plaintiff asserts  that onced the principle is known that access to firearms is a risk factor for suicide that the Glock firearm should be treated in law as having a hidden defect instead of as a product with priveleged immunity due to its inherent and obvious dangerousness. In an instance where a firearm is a risk factor in a suicide it doesn't damage according to its users use or misuse. Instead, it damages it's user just by its presence and availability.   It is rather like a model of car that occasionally has its gas tank explode. Glock Inc. should be responsible for damages whenever that defect manifests itself.

64.    William Han Manstrom-Greening's death was a direct result of defendant Glock Inc.'s negligent failure to issue a warning to its customer, Glenn Greening that access to firearms is a risk factor for suicide  and that its product , the Glock Model 19 Serial Number AYU935US, was

defective by virtue of the fact that access to its product is a risk factor for suicide.  The Plaintiff

is entitled to recover non-economic and economic damages from Glock Inc. as compensation for

the loss of Will's society, companionship and services in such amount as the jury may determine

fair and reasonable compensation for such harms and losses.


## **FOURTH CLAIM FOR RELIEF**

Against Lane County and Lane County  Office of Legal Council
Lane County's failure to indemnify the Plaintiff as required by ORS 30.285


65.     Plaintiff incorporates by reference all allegations contained in the First and Second
Claims for Relief which are paragraphs 1 through 50 and paragraphs 54 through 58 as if fully set
forth herein.

66.     Lane County's negligence  resulted in a suit by the executor of William Han
Manstrom-Greening's estate, his mother, against the Plaintiff Glenn Greening and Lane County
as his employer (Case number 6:18-cv-00530-TC)..  That suit was dismissed as to the Plaintiff
but not before he incurred significant attorney fees and it continues incurring attorney fees while
under appeal.  That suit included statements of fact that were vartiously false, misleading or
irrelevant designed to google-shame Glenn Greening and prejudice credulous potential
jurors.The defendant's disavowal of the Plaintiff by refusing to indemnify him per ORS 30.285
lent credence to that suit and its unnecessarily vindictive assertions .  That was, in effect, Lane
County pointing its finger at the Plaintiff, its co-defendant, to strengthen its own case at his
expense.

67.     Plaintiff acted reasonably and responsibly at all material times in the reasonable belief
that he was authorized to defend himself from harm originating with his job as a Parole and
Probation officer as long as he followed his employers policies and training which he did.

68.     Lane County continued its hostile treatment of the Plaintiff, Glenn Greening, when he
was deposed by the Plaintiff's attorney in that other suit.  Lane County asked Greening two
questions that the Plaintiff believes were irrelevant to that suit except as they might have been
meant to toss their co-defendant to the wolves and to avoid indemnifying him per ORS 30.285.

The questions, as Plaintiff remembers and paraphrases were: "Did you ever use the gun during the period between 2004 and 2012 when you did not carry a gun for work?" Answer" No," "Never?" "No, never."which, if the Plaintiff had answered affirmatively, could suggest that the firearm was used for his personal purposes as well as within the scope of his employment.

69.    Plaintiff requested Lane County indemnify him from the above mentioned suit per the requirements of ORS 30.285.  Lane County conducted an investigation by submitting a series of questions to the Plaintiff intended to show that he was not acting within the scope of his employment when the Plaintiff's duty weapon was misused by his trusted adult son.

70.    Plaintiff and his attorney answered Lane County's question in writing on June 8, 2018 which questions and answers are attached as exhibit 1.

71.    Plaintiff asserts that the County's decision not to indemnify him or to provide counsel was necessarily wrong as it would require an impossibility happen to be correct.  Plaintiff clearly was allowed to carry the firearm to and from work to increase his safety from work-related dangers and his employer knew he did so.  If that was not expected and permitted there would not be a policy allowing it and there would not be qualification of officers to carry backup and off duty weapons.  Between traveling to and from work the Plaintiff complied with all policy regarding the firearm.  During the night, the night of the suicide, the gun was kept secured in the Plaintiff's locked residence in a place that was central in the home for immediate access in dealing with both the front and back doors of my residence.  During waking hours, the gun was stored in a locked safe accessible to myself and my trusted adult son, William who never, to Plaintiff's knowledge, opened the safe.  The gun was secured as per policy at that time.  Even now, the Plaintiff's understanding is that a new, more recent policy does not require that a duty firearm be secured from access by trusted adults within the officer's household.  The County's conclusion, though not received in writing, seems to be that when the Plaintiff arrived home from work with the gun the gun transitioned from work related to non-work related which does not allow for the County's to have authority for its policy for firearm storage, whatever that was or is now.  In other words, when the Plaintiff arrived at home with the gun within the scope of his employment, he would have to magically transfer it to his worksite for storage in accordance with County policy and magically transport it back in the morning to use it again within the

scope of his employment for the trip from home to work. If Plaintiff could not so magically transfer the gun about he would have to act within the scope of his employment to secure or attend the gun appropriately during the intervening hours which he did as required by policy and as required by common sense not the specialized sense one has in hindsight after learning of the knowledge Lane County withheld from the Plaintiff about firearms being a risk factor for suicide. For Lane County to assert that the time clock somehow stopped in the hours between the Plaintiff's arriving home and leaving for work the next day is an absurdity that is contrary to the County's obvious belief that it can authorize Officers to use their personally owned firearms as they see fit when off duty without the requirement of obtaining a permit to carry a concealed weapon.

72.    Lane County has continued to exert authority over off-duty firearms storage by modifying its policy in response to the lawsuit mentioned in paragraph 65 which shows Lane County's belief that an officer's use and control of her duty firearm remains, at all times, within the scope of her employment.

73.    Plaintiff reserves the right to supplement his specifications of defendant Lane County's obligation to indemnify him per ORS 30.285 after conducting reasonable and necessary discovery and securing a transcript of his deposition in that other case to refresh his memory of Lane County's questions mentioned above in paragraph number 68.

74.    Plaintiff is entitled to collect non-economic damages and economic damages from Lane County for its failure to indemnify him per ORS 30.285.in such amount as the jury may determine fair and reasonable for such harms and losses.


        Wherefore, Plaintiff prays for judgment against Defendants for non-economic and economic damages in an amount to be determined by the jury, for Plaintiff's reasonable attorney's fees, for pre-judgment interest on each of said sums and for Plaintiff's costs and disbursements incurred herein

WRONGFUL DEATH - 23

PLAINTIFF DEMANDS A JURY TRIAL


DATED this 13th day of February, 2020


_____
Glenn Greening, Plaintiff